UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

CASE No. 1:09-cr-147-2

v.

HON. ROBERT J. JONKER

MARCUS WADE BUGGS,

    Defendant.
_____/

## **OPINION REGARDING DEFENDANT BUGGS'S FIRST STEP ACT MOTION**

### **INTRODUCTION**

Defendant Buggs pleaded guilty to a Section 841(b)(1)(A) crack cocaine offense and a Section 924(c) firearm offense in August 2009. The crack cocaine offense exposed Defendant to a mandatory minimum sentence of ten years in prison and a maximum of life. The firearm conviction carried a consecutive five-year mandatory minimum sentence. Defendant was sentenced as a career offender in December 2009 to a total term of 190 months imprisonment. He was twenty three years old at the time.

The matter before the Court is Defendant Buggs's motion for modification or reduction in sentence under the newly enacted First Step Act, which provides for the retroactive application of certain sentencing reforms contained in the 2010 Fair Sentencing Act. (ECF No. 127 & 131).[1]

---

[1] Defendant filed two motions, both requesting relief under the First Step Act. The first motion (ECF No. 127), however, is captioned as a motion under 28 U.S.C. § 2255. While Defendant Buggs has previously filed a motion under Section 2255, and so would need authorization from the Court of Appeals prior to filing a second or successive 2255 motion, the body of the motion plainly requests relief under the First Step Act, which is a proceeding under 18 U.S.C. § 3582(c) and not under Section 2255. The Court construes the motion accordingly.

The Court appointed counsel to assist Defendant Buggs with his First Step motion. Both sides have filed briefs. The government responds that Defendant Buggs is eligible for a reduced sentence, but it contends that a reduction is not warranted here because the recalculated guideline range is still above the sentence Defendant Buggs is currently serving. (ECF No. 136).

The defense argues the First Step Act goes further and opens the door to a plenary resentencing with the new mandatory minimum under Section 841 being the only limit. (ECF No. 88). According to the defense this means, among other things, that the Court should apply current law and revisit Defendant Buggs's career offender status. Under its analysis, the defense arrives at a recalculated guideline range that is far less than the range as calculated by the government, and it requests a revised sentence to that of time served. (ECF No. 137). The government disagrees with the defense that the First Step Act permits the type of resentencing the defense seeks.

The Court finds that Defendant Buggs is eligible for relief under the First Step Act, but that he is not entitled to a plenary resentencing. Nor does the Court see any other need for a hearing on the fully briefed issues. The Court can and does exercise its discretion under the First Step Act to relieve Defendant Buggs of the mandatory-minimum sentence originally applicable to his crack cocaine offense, and to reduce Defendant Buggs's sentence as provided in this Opinion and corresponding Order.

**FACTUAL AND PROCEDURAL BACKGROUND**

*1. Defendant Buggs's Charge & Plea*

In April 2009, detectives with the Grand Rapids Police Department were surveilling the residence of Frederick Buggs and his cousin Defendant Marcus Buggs.[2] During their surveillance the detectives observed Frederick Buggs exit the residence and enter a vehicle on the driver's side. Defendant Marcus Buggs was sitting in the passenger's seat. The detectives knew Frederick Buggs did not have a valid driver's license, and they requested that a marked police vehicle execute a traffic stop of the vehicle.

In the process of stopping the cousins, officers observed Defendant Marcus Buggs throwing a bag, later found to contain ¼ ounce of marijuana, from the passenger side window. Then, after stopping the vehicle, officers searched it and found a bag in the center console of the vehicle containing marijuana and Ecstasy. The cousins were arrested, and during a search of their person officers seized $3,377.00 from Frederick Buggs and $905.00 from Marcus Buggs.

Officers next secured and executed a search warrant of the residence. Inside they found drug paraphernalia, a .45 caliber handgun loaded with ammunition, an unloaded .22 caliber handgun with a magazine, quantities of powder and crack cocaine, and miscellaneous paperwork. The crack and powder cocaine were sent to the Michigan Department of State Police Forensic Science Division for testing. The crack cocaine was found to weigh 77.62 grams and the powder cocaine was found to weigh 99.96 grams.

The two cousins were charged in an Indictment on May 14, 2009. With respect to Defendant Marcus Buggs, the Indictment charged him with conspiracy to distribute and possess

---

[2] A confidential informant had previously purchased narcotics from Frederick Buggs during a controlled purchase, and officers suspected Frederick Buggs was involved in a drug trafficking offense.

with intent to distribute 50 grams or more of cocaine base (crack cocaine) in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(iii) (Count 1); possession with intent to distribute five grams or more of cocaine base (crack cocaine) in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) (Count 4); possession of a firearm (the .45 caliber handgun) in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 6); and with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 921(a), 922(g)(1), and 924(a)(2). (ECF No. 1).

On August 24, 2009, Defendant Marcus Buggs pleaded guilty to Counts 1 and 6 of the Indictment under the terms of a written plea agreement. (ECF No. 33). In exchange for his plea, the government agreed to move to dismiss the remaining charges against him, not to oppose a reduction of his offense level for acceptance of responsibility, and not to seek or file supplemental charges under 21 U.S.C. §§ 841(b)(1)(A), 851 that would have subjected Defendant Buggs to a mandatory minimum sentence of life in prison. (ECF No. 28).

2. *PSR & Sentencing*

The Final Presentence Report (PSR) prepared by the probation officer found that Defendant Marcus Buggs was responsible for 99.96 grams of powder cocaine and 77.62 grams of crack cocaine, as well as the .45 caliber handgun. (PSR ¶ 47). At the time, the quantity of narcotics was equivalent to 1,572.38 kilograms of marijuana. (*Id.*). The quantity, in turn, triggered an initial base offense level of 30. After adjusting downward for acceptance of responsibility, the total drug offense level was 27. (PSR ¶ 68).[3]

---

[3] The firearm offense in Count 6 was not grouped with Count 1 under the terms of U.S.S.G. § 3D1.1(b). The guideline range for Count 6 was five years imprisonment, consecutive to the sentence for Count 1, under U.S.S.G. § 2K2.4. For purposes of this motion, both sides focus on Count 1. They do not suggest that any relief is available with respect to Count 6, although the Court may take Count 6's mandatory minimum sentence into consideration when crafting an appropriate sentence. *See Dean v. United States*, 137 S. Ct. 1170, 1178 (2017). While the First Step Act does not provide for a plenary resentencing, these considerations do go into the mix of

The PSR determined, however, that Defendant Buggs qualified as a career offender because he committed the offense of conviction after sustaining two prior felony convictions for a crime of violence and a controlled substance offense. (PSR ¶ 69). Since the statutory maximum penalty for the offense of conviction was life imprisonment under Section 841(b)(1)(A)(iii), the guidelines called for a career offender offense level of 34, after adjusting for acceptance of responsibility. *See* U.S.S.G. § 4B1.1(b)(A) (2009). Level 34 being higher than the offense level calculated under Section 2D1.1, the career offender offense level took precedence and became Defendant Buggs's total offense level. (PSR ¶ 70).

The officer then scored Defendant's criminal history at thirteen points, resulting in a criminal history category of VI.[4] (PSR ¶ 85). The guideline range for the drug offense, based on a total offense level of 34 and criminal history category of VI was 262 to 327 months on the chart. (PSR ¶ 125).[5] The firearm conviction resulted in a 60-month consecutive sentence by statute. At the December 10, 2009 sentencing the defense objected to the career offender enhancement; the absence of a mitigating-role adjustment; the scoring of one point in Plaintiff's criminal history for an April 23, 2009 conviction in state court for use of marijuana; and the inclusion in the PSR of certain criminal conduct and arrests in Defendant's criminal history, though the latter objection did not have a direct guideline impact. The Court then overruled the defense objections and accepted the PSR's guideline determination of 262 to 327 months on the drug offense, along with

---

factors a reviewing court weighs when determining whether to exercise its discretion, and by how much, under the First Step Act.

[4] Because Defendant Buggs qualified as a career offender, his criminal history was also required to be VI. *See* U.S.S.G. § 4B1.1(b) (2009). (PSR ¶ 86).

[5] Without the career offender status, Defendant Buggs's Section 2D1.1 offense level of 27 and criminal history category of VI would have resulted in a guideline range on the chart of 130 to 162 months for the drug offense.

the recommendation for a 60-month consecutive sentence on the firearm conviction that was mandated by statute.

Applying the Section 3553(a) factors, the Court concluded a sentence within this guideline range was too much punishment to achieve the purposes of sentencing. The Court said as much during the hearing:

> Here because of the operation of the career offender guideline, we start out at a bottom range of 262 months all the way up to 327. Plus we have 60 months as a mandatory consecutive sentence on top of that. So at the low end of the guidelines we would be at nearly 25 years.
>
> When I look at all of that and put it together, that's too long in the Court's mind. It's not an appropriate sentence. . . . I think it's greater than necessary to comply with the purposes of the statute[.]

ECF No. 73, PageID.290). Among other things, the Court cited the need to avoid sentencing disparity (considered the co-Defendant's sentence) and Defendant's age, as factors justifying a downward variance. The Court then concluded that a modest downward variance would better reflect the sentencing considerations and, to that end, looked to what would have been the guideline range on the drug offense without the career offender enhancement—130 to 162 months. The Court found that range to be "a more accurate indicator of where the relative culpability of Marcus Buggs fits in this case, particularly when considered with the added 60 months consecutive sentence that has to happen here." (*Id.* at PageID.296).

The Court proceeded to impose a sentence of 130 months on Count 1, with the Count 6 firearms conviction carrying the mandatory consecutive sentence of 60 months, for a total of 190 months imprisonment. While the Court was satisfied this sentence properly reflected the purposes of sentencing, the Court still found the sentence to be "more than sufficient to satisfy the deterrent and punitive purposes of sentencing." Indeed, the Court remarked "I hope not too severe." (*Id.*).

Judgment entered on December 11, 2009. (ECF No. 43). Defendant did file a direct appeal of his convictions or sentence.

### 3. Post Sentencing Matters

#### A. Government's Rule 35(b) Motion

On December 8, 2010, the government moved for a downward departure under Rule 35(b) due to Defendant's substantial assistance to the government since his conviction and sentence. (ECF No. 52). The government requested and recommended a ten-month reduction in sentence to reflect that assistance. This resulted in a sentence reflecting the mandatory minimum on Count 1—120 months[6]—and the mandatory minimum sentence on Count—60 months. The Court granted the motion on December 13, 2010, and reduced Defendant Marcus Buggs sentence to a total term of 180 months. (ECF No. 53).

#### B. Defendant Buggs's Motion for a Reduced Sentence Under Guideline Amendment 750

On January 30, 2012, Defendant Buggs moved to reduce his sentence under Guideline Amendment 750. (ECF No. 66). In a Sentence Modification Report, the probation officer determined that Defendant's amended guideline calculations remained unchanged due to Defendant's career offender status. The officer's recommendation was for no reduction. (ECF No. 74). The Court accepted that recommendation and thus denied Defendant's motion in an Order dated December 14, 2012. In its Order, the Court noted that the career guidelines continued

---

[6] The mandatory minimum in the drug offense was no longer a legal limitation when the government filed its Rule 35 motion because the Rule itself permits the Court to sentence below the mandatory minimum. *See* Fed. R. Crim. P. 35(b)(4); *see also United States v. Grant*, 636 F.3d 803, 807, 813-14 (6th Cir. 2011) (en banc). Even so, the government argued, and the Court agreed, that the incremental "substantial assistance" value of Defendant's contribution warranted only a 10-month reduction in light of all the relevant considerations.

to apply to Defendant, and so Defendant Buggs was ineligible for a reduction in sentence. (ECF No. 79).

Defendant appealed to the Sixth Circuit Court of Appeals. He argued the Court had sentenced him not on the career offender guidelines, but instead on the drug guidelines. Had he been sentenced under the drug guidelines, Defendant asserted, Amendment 750 would have had the effect of reducing his relevant drug guideline range on the drug offense from 130-162 months to 92-115 months. But this was a range that fell below the statutory minimum sentence on Count 1. Accordingly, the Sixth Circuit did not reach the issue advanced by Defendant Buggs because the Rule 35(b) reduction to 180 months had given Defendant all the relief he was entitled to. *United States v. Buggs*, No. 12-2626 (6th Cir. Sept. 27, 2013).[7]

### C. Defendant Buggs's Motion for a Reduced Sentence Under Guideline Amendment 782

On January 2, 2015, Defendant Buggs moved to reduce his sentence under Guideline Amendment 782. (ECF No. 97). A probation report concluded that Defendant was ineligible for relief under 18 U.S.C. § 3582(c)(2) because the guideline range at sentencing was determined based on the defendant's status as a career offender. (ECF No. 100). Defendant objected, again arguing that he had been sentenced under the drug guidelines and not as a career offender. (ECF No. 104). The Court denied the motion on June 5, 2015, noting that Defendant's "guidelines were, and still are, controlled by the career-offender enhancement, as the Probation Report on Eligibility states." (ECF No. 105). Defendant did not appeal that determination.

---

[7] Defendant Buggs reportedly took the position that he remained subject to both mandatory minimums in the case, which may well have been the case for purposes of assessing the proper application of the retroactive Guideline Amendment 750.

### D. Defendant Buggs's Section 2255 Motion

On May 16, 2016, Defendant Buggs filed a motion to vacate, set aside or correct his sentence under Section 2255. *Buggs v. United States*, 1:16-cv-527 (W.D. Mich. filed May 16, 2016). In his first ground for relief, Defendant argued that his career offender enhancement was unconstitutional based on the Supreme Court's holding in *Johnson*. More specifically, Defendant Buggs asserted that the fleeing and eluding predicate under the residual clause of Section 4B1.2(a)(2) was unconstitutional.

The Court rejected the argument in an opinion and order dated March 24, 2017:

> In *Welch v. United States*, 136 S. Ct. 1257 (2016), the Court held that *Johnson* announced a substantive rule of constitutional law that applies retroactively to ACCA cases on collateral review. Buggs argues that *Johnson* applies here because he believes the Court imposed an enhanced sentence under the residual clause of U.S.S.G. § 4B1.2(a), which was parallel language to the residual clause held unconstitutional in *Johnson*.
>
> *Johnson* does not apply directly to Buggs's situation because he was not convicted and sentenced under the ACCA. Instead, he was sentenced as a career offender under the federal sentencing guidelines. And the United States Supreme Court has just concluded that the vagueness analysis of the ACCA in *Johnson* does not apply to the sentencing guidelines. *Beckles*, 2017 WL 855781 (Mar. 6, 2017). Accordingly, Petitioner's claim is foreclosed by *Beckles*.

*Buggs v. United States*, No. 16-cv-527 (W.D. Mich. Mar. 24, 2017) (ECF No. 11). Defendant did not appeal the Court's denial of the Section 2255 motion.

### 4. *The Fair Sentencing Act of 2010*

In the summer of 2010 Congress passed the Fair Sentencing Act of 2010, Pub L. No. 111-220, 124 Stat. 2372 (2010). The Fair Sentencing Act reduced the sentencing disparity between crack and powder cocaine offenses by increasing the amount of crack cocaine needed to trigger the mandatory minimums established in the Anti-Drug Abuse Act of 1986. *United States v.*

9

*Blewett*, 746 F.3d 647, 649 (6th Cir. 2013) (en banc); *see also Dorsey v. United States*, 567 U.S. 260, 263-64 (2012). More specifically, the Fair Sentencing Act increased the threshold quantity in 21 U.S.C. § 851(b)(1)(A)(iii) from 50 grams or more of crack cocaine to 280 grams or more. Fair Sentencing Act at § 2(a)(1). The Fair Sentencing Act also increased the threshold quantity in 21 U.S.C. § 841(b)(1)(B)(iii) from 5 grams or more of crack cocaine to 28 grams or more. Fair Sentencing Act at § 2(a)(2). Today, therefore, in order to trigger the 10 years to life sentencing range of Section 841(b)(1)(A)(iii) that Defendant Buggs was convicted under, the offense must involve more than 28 grams of crack cocaine.

Those changes made by the Fair Sentencing Act, however, were not retroactive. *Blewett*, 746 F.3d at 650.[8] Because Defendant Buggs had been convicted and sentenced before the Fair Sentencing Act's enactment he was not, at that time, eligible for any relief.

### 5. *The First Step Act of 2018*

On December 21, 2018, President Trump signed the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (the "First Step Act") into law. The First Step Act "modified prior sentencing law and expanded vocational training, early-release programs, and other programming designed to reduce recidivism." *United States v. Simons*, 375 F. Supp. 3d 379, 385 (E.D.N.Y. 2019). In Section 404 of the First Step Act, Congress made the Fair Sentencing Act's statutory changes for crack cocaine offenses retroactive to defendants who were sentenced before August 3, 2010:

---

[8] In *Dorsey v. United* States, 567 U.S. 260 (2012), the Supreme Court determined that the Fair Sentencing Act applied to any defendant sentenced on or after August 3, 2010, regardless of when the offense occurred. Because Defendant Buggs was sentenced before August 3, 2010, *Dorsey* did not provide him with a pathway to any relief.

SEC. 404. APPLICATION OF FAIR SENTENCING ACT.

(a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act of 2018, Pub. L. No. 115-319, § 404, 132 Stat. 5194 (2018).

Accordingly, defendants who were convicted before August 3, 2010 of a crack cocaine offense for which the Fair Sentencing Act reduced their statutory penalties are now eligible for consideration of a reduced sentence. First Step Act of 2018, Pub. L. No. 115-319, § 404(a), (b), 132 Stat. 5194 (2018). Whether to reduce the sentence of an eligible defendant is left to the reviewing court's discretion. *Id.* at § 404(c). No reduction is required.

## DISCUSSION

1. **Summary of the Court's Process**

In an earlier Order, this Court set out a two-step process for evaluating First Step Act motions. *See United States v. Boulding*, 379 F..Supp..3d 646 (W.D. Mich. May 16, 2019). The first step is determining eligibility. In *Boulding* the Court concluded that "eligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act." *Id.* at 651. As applied to that case, this determination meant that the quantity of narcotics (whether admitted, found by a jury, or found by a court) did not factor into the question of eligibility. That is true here as well, but this case also presents issues relating to a defendant's career offender status and changes (or not) to the guideline range. Based on the Court's approach in *Boulding*, these questions do not affect the categorical eligibility determination. They simply inform the Court's discretionary call at the second step.

At the second step, a reviewing court evaluates the motion to determine whether it should exercise its discretion to reduce a defendant's sentence. This calls for a determination of the scope of the relief available. Here the Court previously determined, and reaffirms here, that the First Step Act does not provide for a plenary-resentencing. *Id.*; *see also United States v. Davis*, No. 07-CR-245S (1), 2019 WL 1054554, at *2 (W.D.N.Y. Mar. 6, 2019) (concluding the First Step Act does not provide for a plenary resentencing and that the defendant need not be present for a reduction in sentence); *United States v. Jones*, No. 2:05-CR-29-FL-1, 2019 WL 2480113, at *2 (E.D.N.C. June 11, 2019) (noting that under 18 U.S.C. § 3582(c) a court may not modify a term of imprisonment except for a narrow range of situations, including "to the extent otherwise expressly permitted by statute," 18 U.S.C. § 3582(c)(1)(B) and holding that "[t]he First Step Act

permits the court to impose a 'reduced sentence' and 'modify' the term of imprisonment under § 3582(c)(1)(B), but it does not 'expressly permit' full resentencing."). But as the Court has also remarked, "unlike earlier rounds of retroactive crack or other drug sentencing relief, the First Step Act does not impose any artificial or guideline limits on a reviewing court. These earlier rounds of retroactive reduction proceeded under 18 U.S.C. § 3582(c)(2) based on Sentencing Commission guideline reductions and were therefore subject to the limitations built into that section. The First Step Act is different. The Sentencing Commission has nothing to do with it." *Boulding*, 379 F. Supp. 3d at 653.

This means, among other things, that career offenders like Defendant Buggs who did not previously receive relief under the retroactive amendments may now be able to receive a reduced sentence, if the court exercises its discretion to do so. At this point the Court considers whether to reduce a sentence by looking at the factors set out in Section 3553(a), the revised statutory range under the Fair Sentencing Act, any amendments to the guideline range, and post-sentencing conduct. *Jones*, 2019 WL 248-113, at *2.

**2. Defendant Buggs is Eligible for a Reduced Sentence.**

At the first step, the Court concludes Defendant Buggs is eligible for consideration of a reduced sentence under the First Step Act. Indeed, the parties do not argue otherwise. Defendant Buggs's offense was committed before the Fair Sentencing Act's enactment on August 3, 2010; he was further convicted under the enhanced penalties found in Sections 841(b)(1)(A)(iii); and those penalties were "modified by section 2 . . . of the Fair Sentencing Act of 2010[.]" He was, accordingly, convicted of a "covered offense."

The categorical limitations in Section 404(c) also do not apply to Defendant Buggs. His sentence was not "previously imposed or previously reduced in accordance" with the Fair

13

Sentencing Act's amendments. And he has not previously moved to reduce his sentence under Section 404 of the First Step Act. Accordingly, the Court concludes that Defendant is eligible under Section 404(a) for a reduced sentence under Section 404(b).

3. **Scope of Relief**

   a. *Guideline Comparison*

At the second step the Court considers the scope of relief available to Defendant and then proceeds to determine by how much, if any, it should reduce Defendant Buggs's sentence. The Court begins with a guideline range comparison. The table below demonstrates the differences between the offense level calculation as to Defendant's crack cocaine conviction in Count 1 as it existed when Defendant Buggs was originally sentenced in 2009 and the guidelines as they exist now, taking into account all intervening drug guideline amendments and the retroactive application of the Fair Sentencing Act. The chart also reflects the parties' dispute over Defendant's offense level and criminal history category when calculated "as if" the Fair Sentencing Act applies.

| Count 1 | Original Guidelines | Current Guidelines |
|---|---|---|
| **Base Offense Level**<br><br>*99.96 G Powder Cocaine*<br>*77.62 G Crack Cocaine* | Level 30 (§ 2D1.1(c)(4) & n.10(D)(i)) (2009)<br><br>1,572.39 kilograms of marijuana equivalent | Level 24 (§ 2D1.1(c)(8))<br><br>297.173 kilograms converted drug weight |
| **Adjustments for Acceptance of Responsibility** | -3 levels (§ 3E1.1(a) & (b)) | -3 levels (§ 3E1.1(a) & (b)) |
| **Total Drug Offense Level (After Acceptance)** | Level 27 | Level 21 |
| **Statutory Penalty** | 10 years to life<br>*Section 841(b)(1)(A)(iii)* | 5 to 40 years<br>*Section 841(b)(1)(B)(iii)* |
| **Chapter Four Enhancement (After Acceptance)** | Level 34 (§ 4B1.1(b))<br><br>*Maximum Life Penalty* | Government: Level 31 (§ 4B1.1(b)(2))<br>*Maximum 40-year penalty*<br>Defense: Level 21 (*Enhancement Not Applicable*) |

| | | |
|---|---|---|
| **Total Offense Level** | Level 34<br><br>*Based on Career Offender Status* | Government: Level 31<br>*Based on Career Offender Status* |
| | | Defense: Level 21<br>*Based on Drug Quantity* |
| **Criminal History Category Before Chapter 4** | Category VI<br>13 Criminal History Points | Government: Category VI[9] |
| | | Defense: Category V |
| **Criminal History Category After Chapter 4** | Category VI<br>(§ 4B1.1(b)) | Government: Category VI |
| | | Defense: Category V<br>(*Enhancement Not Applicable*) |
| **Guideline Range Before Consideration of Career Offender Status** | 130 to 162<br>(LO 27; CH VI) | Government: 77 to 96 months (LO 21; CH VI) |
| | | Defense: 70 to 87 months (LO 21; CH V) |
| **Guideline Range After Consideration of Career Offender Status** | 262 to 327 months<br>(LO 34; CH VI) | Government: 188 to 235 months (LO 31; CH VI) |
| | | Defense: 70 to 87 months (LO 21; CH V) |

The parties agree that the statutory penalty provision applicable to Defendant Buggs has been reduced because the amount of crack cocaine involved in the offense—approximately 78 grams of crack cocaine—is less than the 280 grams of crack cocaine now necessary to trigger those penalties.[10] Beyond that, there is substantial disagreement on the scope of available relief. To the government, the only relief available is a reduction in the mandatory minimum penalty in Count 1 from 10 years to 5 years imprisonment, and a further reduction in the maximum penalty from life imprisonment to 40 years imprisonment. The only practical result for Defendant Buggs is a

---

[9] As discussed further below, the government does not indicate whether it agrees or disagrees with the defense that if calculated under the current version of the sentencing guidelines, Defendant's criminal history category would be V. Rather it insists that such a determination is outside the scope of the review permitted by the First Step Act.

[10] Elsewhere, this Court has rejected the government's argument that a defendant is ineligible for relief if the record, including judge found facts, contains an amount sufficient to trigger the original penalty provisions. The Court need not probe any further into the issue here because the amount in this case is not sufficient to trigger the original penalty provisions under both the quantity charged in the Indictment and the quantity found in the PSR that was attributable to Defendant Buggs.

resulting decrease in his career offender offense level from 34 to 31 based on the maximum penalty now applicable to the conviction. *See* U.S.S.G. § 4B1.1(b). Everything else, including Defendant's criminal history category, remains the same under the government's analysis, resulting in an amended guideline range of 188 to 235 months imprisonment for Defendant's drug offense. Because the sentence Defendant Buggs is currently serving with respect to Count 1—120 months—is substantially below the bottom end of the government's recalculated guideline range for that count, the government suggests no further reduction is warranted.

The defense, in arguing for a plenary resentencing, contends the First Step Act goes much further and that it permits the Court to reevaluate Defendant's career offender status and the scoring of Defendant's criminal history points. With respect to his career offender status, the defense suggests that Defendant Buggs's conviction for fleeing a police officer is no longer a crime of violence under Section 4B1.2 of the guidelines. The conviction, the defense says, is not an enumerated offense and it does not have as an element the use, attempted use, or threatened use of physical force against the person of another. And while the conviction previously qualified under the definition's residual clause, the residual clause has been removed from the guideline definition of a crime of violence. *See* U.S.S.G. app. C, amendment 798; 81 Fed. Reg. 4741-02 (Jan. 27, 2016).

In addition, the defense suggests that applying the First Step Act and current law would result in a reduction in Defendant's criminal history category and that this is the determination that would control, given the defense position that Defendant no longer qualifies as a career offender. Absent any career offender considerations, a defendant's criminal history category is determined by totaling the defendant's criminal history points and referencing the sentencing table at U.S.S.G. Chapter 5, Part A. Here, the probation officer determined Defendant scored at 13 points, the

16

minimum necessary to score at category VI. The defense notes that one of those points was added by the probation officer because the offense of conviction took place less than two years following the defendant's release from custody. (PSR ¶ 84). The current version of the sentencing guidelines, however, no longer score "recency" points. *Compare* U.S.S.G. § 4A1.1(e) (2009) *with* U.S.S.G. § 4A1.1(e) (2018); *see also United States v. Davy*, 433 F. App'x 343, 346 n.2 (6th Cir. 2011) (noting the provision had been stricken from the guidelines under Guideline Amendment 742, effective November 1, 2010). Removing this point from Defendant's criminal history score would result in a score of only 12 points, corresponding to a criminal history category of V. Applying the above considerations, the defense asserts Defendant is no longer a career offender and his recalculated guideline range with respect to the drug conviction is 70 to 87 months (LO 21, CH V). The government replies by asserting that the First Step Act does not provide for a plenary resentencing, and the two guideline amendments are not retroactive.

The analysis the Court detailed in *Boulding*, and described above, makes clear that the First Step Act does not provide for a plenary resentencing. Among other things this means the Court is not required to hold a hearing where the Defendant is present. But the previous policy statements and guideline constraints that were in effect during the earlier rounds of retroactive relief also do not restrain the Court in evaluating motions for a reduced sentence under the First Step Act. The government does not appear to disagree that, if he were scored today, Defendant would no longer qualify as a career offender and score at a criminal history category of VI, rather it simply insists as a procedural matter that the Court should visit the issue.

The Court is inclined to believe that the defense is likely correct that applying the current version of the guidelines would result in a conclusion that the career offender enhancement no longer applies to Defendant Buggs. And it may also well be the case that Defendant Buggs would

17

presently score at criminal history category V.  Ultimately, the Court does not find it essential to resolve the question here because the guideline recalculation is simply one factor in the Court's consideration and not a controlling one.

### b. *Discretionary Decision in this Case*

The Court has considered the position of both parties on the revised guideline issue.  The Court has also reviewed the original PSR, and the rest of the record.  The Court elects to exercise its discretion to reduce Defendant Buggs's sentence under the First Step Act.  In evaluating the extent of the reduction, the Court considers the guideline analysis of each side, as well as the factors set forth in § 3553(a).  This Court originally found a basis in these factors for a downward variance to the bottom end of the sentencing guidelines as they would have been absent Defendant's career offender status, leaving Defendant only ten months above the mandatory minimum sentence originally applicable to that Count.  All agree that the mandatory minimum sentence now applicable to Defendant is no more than five years.  In addition, the guideline impact of the career offender enhancement continues to be significant, if it applies.

All things considered, the Court is satisfied in this case that Defendant Buggs's post-sentencing conduct has demonstrated a strong desire to address the root cause of his offense behavior here and in his criminal history more generally.  While he has incurred some disciplinary infractions, he has also completed programs focused on drug abuse.  He has, furthermore, completed programs of academic study.  Defendant has been in custody for a lengthy period of time already and will still have five years of supervision to see whether he can apply the lessons he has learned in a community setting.

In weighing all these considerations, the Court finds that a total custodial term of 144 months, consisting of 84 months on Count 1 and 60 months on Count 6, consecutive to Count 1,

satisfies the Section 3553 factors and comports with the relief authorized by the First Step Act. All other terms of the original sentence, including the five years of supervised release, remain unchanged. This sentence reflects the purposes of sentencing, including the seriousness of the offense, deterrence to others, protecting the public, respect for the law, and providing rehabilitative opportunities. The sentence is below the revised guideline range calculated by the government but above the lowest revised guideline calculated by the defense. More importantly, in the Court's view, the sentence is the best balance of the Section 3553 factors.

The docket reflects that Defendant Buggs was arrested on May 18, 2009. (ECF No. 5). He appears to have been in continuous marshal and BOP custody since then, a period of approximately 122 months, and according to the Bureau of Prisons website Defendant is currently scheduled to be released on January 10, 2024. Considering the availability of good time credits, it is possible the sentence the Court is entering today will put Defendant Buggs close to a release date. Accordingly, the Court rules that the reduced sentence will be for no less than time served. *See United States v. Laguerre*, No. 5:02-cr-30098-3, 2019 WL 861417, at *3-*4 (W.D. Va. Feb. 22, 2019) (declining, under First Step Act, to reduce a sentence to less than time served because the need to protect the public and for deterrence directs that a defendant not be allowed to "bank time."). Moreover, the Court will further Order that this decision take effect ten days from the date of this Opinion in order to permit the Bureau of Prisons to complete certain administrative requirements, if necessary.

## CONCLUSION

Defendant Buggs's pro se motions for modification or reduction of sentence under the First Step Act (ECF Nos. 127 & 131) are granted to the extent detailed in this Opinion, and his term of imprisonment reduced to a total term of 144 months imprisonment but no less than time served.

All other terms of the original sentence, including the five years of supervised release, remain unchanged.

A separate Order consistent with this Opinion shall issue.

Dated:   July 22, 2019              /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    CHIEF UNITED STATES DISTRICT JUDGE